**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| AZ Holding, L.L.C., a North Dakota limited liability company,<br><br>        Plaintiff,<br><br>vs.<br><br>Thomas C. Frederick and Christine J. Cobb, husband and wife; RBW Consultants, Inc., an Arizona corporation; and Bumaro, L.L.C., an Arizona limited liability company,<br><br>        Defendants.<br>_____<br>Thomas C. Frederick and Christine J. Cobb, husband and wife; RBW Consultants, Inc., an Arizona corporation; Bumaro, L.L.C., an Arizona limited liability company,<br><br>        Counterclaimants,<br><br>vs.<br><br>AZ Holding, L.L.C., a North Dakota limited liability company,<br><br>        Counterdefendant.<br>_____ | No. CV-08-0276-PHX-LOA<br><br>**ORDER** |

        This matter is before the Court on review of the parties' briefing in response to the Court's December 24, 2009 Order to Show Cause why the Court should not enter an order compelling this entire case to arbitration, dismiss without prejudice or stay this federal action, and deny the pending Motion for Partial Summary Judgment without

prejudice. (docket # 164)  After hearing oral arguments, reviewing relevant case law, and considering all briefing, the Court finds Plaintiff has failed to establish prejudice by Defendants' conduct in this litigation and, therefore, Defendants have not waived their contractual right to arbitration. The Court will grant Defendants' request and will order, *inter alia*, the parties to proceed to arbitration on all issues.

## **BACKGROUND**

This case arises out of the sale of a modular building business and lease containing an option to buy the business' office building. (docket # 56)  On June 15, 2007, Plaintiff AZ Holding, LLC ("Plaintiff" or "AZH") purchased three corporations from Defendants Frederick and Cobb, husband and wife, co-founders of the business,[1] and another individual.[2]  The three related corporations that Plaintiff purchased were Ameri-Fab, Inc., American Modular Service, Inc. and Amerimod Transport, Inc. (*Id*. at 5)  In connection with the sale, the parties contemporaneously entered into four agreements - Asset Purchase and Sale Agreement, Consulting Agreement, Lease Agreement, and Non-Competition and Confidentiality Agreement. (*Id*.)  Plaintiff's pending Motion for Partial Summary Judgment, docket # 140, focuses on the parties' Lease Agreement, and specifically, an option to purchase the business' former office building located at the Deer Valley Airport Industrial Park in Phoenix. Except as germane to the issue of arbitration, the Court will not repeat the history of this litigation with which the parties are quite familiar.

On or about December 23, 2009, while reviewing Defendants' November 30, 2009 Response to Plaintiff's pending Motion for Partial Summary Judgment, this Magistrate Judge learned for the first time after nearly two years of active litigation that the parties had entered into a contractual arbitration agreement, located in the Asset

---

[1] The Defendants are Thomas C. Frederick, Christine J. Cobb, RBW Consultants, Inc. and Bumaro, L.L.C. (collectively the "Defendants").

[2] This former shareholder, Marci Mitchell, is not a party to this lawsuit.

Purchase and Sale Agreement ("APA"), in connection with the sale of the business to Plaintiff. (docket # 159 at 3) Section 9.12 of the APA requires that the parties resolve by arbitration:

> Any disagreement, Claim, demand, controversy, or dispute (collectively "Dispute") in any way arising out of or relating to [the APA] and its performance or alleged breach, whether dispute by agreement, whether involving questions of law or fact or both and regardless of the nature thereof or the remedy therefore, which is not settlement by agreement of the parties . . . .

(docket ##1, Exhibit ("Exh") 1-2 at 2-33, 167 at 3; also see, docket # 160, Defendants' Controverting and Supplemental Statement of Facts ("DSOF") ¶ 18 at 7; Exh 5, ¶ 9.12 at 30-31).

The parties' arbitration agreement provides that "the decision of the arbitrator(s) shall be final and judgment thereon may be entered in any court of competent jurisdiction." (*Id.*, Exh 5 at 31) Without citation to any legal authority, Defendants first raised the issue of arbitration in this case, not as a request for an order compelling arbitration, but rather, as an affirmative defense,[3] to demonstrate that Plaintiff was the first to default under the parties' integrated purchase and lease agreements, relieving Defendants of their contractual obligations. (docket # 159 at 9-10) Surprisingly, Plaintiff did not address this issue in its Reply in Support of its Motion for Partial Summary Judgment. (docket # 162) On January 11, 2010, after the Court issued the December 24, 2009 Order to Show Cause ("OSC"), Defendants, for the first time in a court document, "urge[ed] the Court to dismiss this Case and deny the pending MPSJ so that the Claims asserted may be expeditiously resolved through arbitration." (Defendants' Response to OSC; docket # 167 at 5)

---

[3] This defense was not raised in either of Defendants' Answers. Rule 8(c)(1), FED. R.CIV.P. (docket ## 27, 147) The Ninth Circuit has held that unless there is a showing of prejudice by the plaintiff, "the bare fact that [a defendant] failed to raise an affirmative defense is inadequate by itself to support a claim of waiver of arbitration." *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986) (citing *Rush v. Oppenheimer & Co.*, 779 F.2d 885, 889 (2d Cir. 1985)).

Plaintiff's Amended Response[4] to the OSC contends "Defendants' conduct in this litigation and delay constitute a waiver of any purported right to arbitrate." (docket # 170 at 4) Plaintiff argues that "it would be inequitable and unjust to force the parties to arbitrate after almost two years of litigation as it would impose substantial and unwarranted prejudice upon Plaintiff." (*Id.* at 1) Plaintiff argues that this is not a case where Defendants timely requested arbitration and Plaintiff refused. Plaintiff claims it has already incurred substantial litigation expenses exceeding $380,000 to date. (*Id.* at 3) Plaintiff contends that "[i]f forced to arbitrate this dispute, Plaintiff will be made to forego its efforts in having prepared and served the Rule 11 motion, filing its summary judgment motion, and engaging in extensive pretrial discovery."[5] (*Id.*) Plaintiff points out that "Defendants served a demand for arbitration with the [American Arbitration Association "AAA"] upon Plaintiff on December 17, 2009[,]"[6] for the first time in this case. (*Id.* at n. 1; Exh A) Plaintiff asserts that if the Court orders arbitration so late in this case, it would "reward[ Defendants'] dilatory conduct" after they "obtained all the discovery and disclosures from Plaintiff that would not otherwise have been permitted under the rules of the American Arbitration Association." (*Id.* at 3)

Defendants' Reply to Plaintiff's Amended Response to OSC asserts "there

---

[4] Plaintiff's original 24-page Response to the Court's December 24, 2009 OSC was stricken with leave to file an amended response due to Plaintiff's counsels' violation of the District Court's 17-page limit. See, LRCiv 7.2(e) ("Unless otherwise permitted by the Court, a . . . response including its supporting memorandum, each shall not exceed seventeen (17) pages, exclusive of attachments . . . ."). Enforcement of this Local Rule assures one party does not have a briefing advantage over an adverse party who complies with the page limitation.

[5] The docket does not reflect a pending Motion for Rule 11 Sanctions against Defendants.

[6] Defendants' Exhibit B to their Response to the OSC is a letter from AAA's case manager, dated January 4, 2010, "acknowledg[ing] receipt on December 23, 2009, of a Demand for Arbitration dated **December 23, 2009**, providing for administration of a controversy arising out of contract between the above-captioned parties . . . ." (docket # 167-2, Exh B at 1) (emphasis added).

has been no waiver [of arbitration] by Defendants. And all claims before this Court relate to the [APA] and, thus, are arbitrable." (docket # 173 at 2)  First, relying upon *Britton v. Co-op Banking Group*, 916 F.2d 1405, 1412 (9th Cir. 1990), Defendants claim they "were unaware of their right to arbitrate the claims against AZH" and Plaintiff is required "to prove that Defendants were aware of the Arbitration Provision, which AZH has not done." (*Id*. at 3)  Next, Defendants assert that, like the facts in *Sovak, M.D. v. Chugai Pharmaceutical Co.*, 280 F.3d 1266 (9th Cir. 2002), there is no "waiver where the plaintiff (like AZH) filed two amended complaints over the course of litigation before the defendant moved to compel arbitration."  (*Id*. at 4)  While Defendants acknowledge that they engaged in discovery, they argue their actions have not prejudiced Plaintiff because "discovery alone does not constitute waiver of a right to compel arbitration[,]" citing *Britton*, 916 F.2d at 1413; "the AAA Rules expressly permit discovery"; and "arbitration of this case will not render the discovery efforts of the parties futile." (*Id*. at 4, 7)  Finally, Defendants refute as unfounded Plaintiff's claims of prejudice that AAA arbitration permits only recovery of attorneys' fees incurred in connection with arbitra-tion; that the parties' arbitration provision requires them to conduct the arbitration in Fargo, North Dakota, rather than Phoenix; and that Plaintiff's claims arising out of the Lease Agreement are not arbitrable. (*Id*. at 7-11)

In its Reply, Plaintiff argues "Defendants' Response purposefully ignores the extent to which they voluntarily participated in the litigation process since the action commenced in February 2008[,]" emphasizing that Defendants have filed two counter-claims, "more than 35 documents with the Court over the last two years and fully participated in pretrial discovery until it closed in October, 2009," and first "rais[ed] the arbitration issue as a 'defense' in their Response in opposition to Plaintiff's summary judgment motion, while failing to ever request or move the Court to compel arbitration." (docket # 172 at 2)  "Even if Plaintiff was the first to repudiate its right to arbitrate, the record in this case overwhelmingly demonstrates that Defendants acquiesced in that decision and agreed to litigate rather than pursue arbitration." (*Id*. at 3) (emphasis omit-

ted). Plaintiff further asserts that Defendants' case law is distinguishable from this case because "[n]one of Defendants' cases examine the issue of whether a party had waived its right to compel arbitration due to its litigation conduct in a judicial forum." (*Id.* at 4) Alternatively, Plaintiff contends, because "the Lease Agreement at issue does not require arbitration[,]" and if the Court does not find the parties waived their right to arbitration, "the Court retain jurisdiction as to all three claims alleged in Plaintiff's Complaint (Counts I, II, and III) and Count Two of the Counterclaim, and compel only those claims arising under the [APA], the Consulting Agreement, and the Non-compete Agreement to arbitration (Counts One, Three and Four of the Counterclaim)." (*Id.* at 5)

## **ARBITRATION**

The Federal Arbitration Act ("FAA"), Title 9 U.S.C. § 1 *et seq.*, creates "a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). The FAA applies to any "written provision in . . . a contract evidencing a transaction involving commerce." Title 9 U.S.C. § 2. The FAA mandates that "'district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[.]'" *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000)). Congress' intent in passing the FAA was twofold: "to ensure judicial enforcement of privately made agreements to arbitrate [and] to promote the expeditious resolution of claims." *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219 (1985).

There is a "strong federal policy in favor of enforcing arbitration agreements." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 479 (1989). Under Title 9 U.S.C. § 2, contractual arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revoca-

tion of any contract." Title 9 U.S.C. § 2.[7] "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218 (citing §§ 3, 4); *Meritage Homes Corp. v. Han-cock*, 522 F.Supp.2d 1203, 1210-11 (D.Ariz. 2007). Pursuant to Title 9 U.S.C. § 3, a district court is required to either stay proceedings pending arbitration or dismiss the case if it determines that the issues involved are referable to arbitration under a written arbitration agreement. *Meritage Homes,* 522 F.Supp.2d at 2011 (citing *Pearce v. E.F. Hutton Group, Inc*., 828 F.2d 826, 830 (D.C.Cir. 1987) (once a district court is satisfied that the issue before it is referable to arbitration, the court must, on application, stay the proceeding pending the arbitration); *Sparling v. Hoffman Constr. Co., Inc*., 864 F.2d 635 (9th Cir. 1988) (district courts have discretion to dismiss cases in favor of arbitration under 9 U.S.C. § 3).

**A. Waiver of the Right to Compel Arbitration**

"A party seeking to prove waiver of a right to arbitrate must demonstrate (1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Britton*, 916 F.2d at 1412. "Because waiver of the right to arbitration is disfavored, 'any party arguing waiver of arbitration bears a heavy burden of proof.'" *Fisher*, 791 F.2d at 694 (quoting *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693

---

[7] Title 9 U.S.C. § 2 provides:
> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2

F.2d 1023, 1025 (11th Cir. 1982)). Here, Plaintiff bears the "heavy burden of proof in showing [all three] elements." *Sovak*, 280 F.3d at 1270 (quoting *Britton*, 916 F.2d at 1412). "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself or *an allegation of waiver*, delay, or a like defense to arbitrability." *Fisher*, 791 F.2d at 694 (citing *Moses*, 460 U.S. at 24-25) (emphasis added).

**1. Knowledge of an Existing Right to Compel Arbitration**

Here, defense counsel, retained in October 2009 and the second law firm to represent Defendants in this litigation, acknowledges that when he reviewed the file, he "became aware of the Arbitration Provision contained in the [APA] and promptly reviewed the Arbitration Provision with the Defendants. Until then, Defendants were unaware of their right to arbitrate the claims against AZH." (docket # 173 at 3) Defense counsel does not claim, however, that the signatures on the four contracts, including the APA and Lease Agreement, are not those his clients. He does not provide the Court with an affidavit from any Defendant denying the signatures on the contracts are theirs, does not explain why his clients would be "unaware" of the arbitration clause in the APA which bear Defendants Tom Frederick's and Christine Cobb's signatures, in his corporate capacity as President, and their individual capacities as shareholders. (docket # 1-2, Exh 1 at 32-33). Moreover, Defendants make no claim that Plaintiff engaged in fraud by false representations to the APA's contents. See, *e.g.*, *Pacific Western Const. Co. v. Industrial Com'n of Arizona*, 166 Ariz. 16, 20, 800 P.2d 3, 7 (Az.Ct.App. 1990) ("Failure to read an agreement reduced to writing and signed by a party precludes recovery for fraud or misrepresentation concerning oral statements made about the contents of the agreement."). Further, "[i]t has long been the common law rule that signing a document authenticates and adopts the words it contains, even if there was a lack of subjective understanding of the words or their legal effect. In essence, people are presumed to be bound by what they sign." *In re Schwalb*, 347 B.R. 726, 743 (D.Nev. 2006); *Operating Engineers Pension*

*Trust v. Gilliam*, 737 F.2d 1501, 1504 (9th Cir. 1984) ("[one] who signs a written agreement generally is bound by its terms, even though he neither reads it nor considers the legal consequences of signing it."). Significantly, Plaintiff confirms, and Defendants do not deny, that the APA containing the arbitration clause was not only signed by Defendants but was prepared by the same law firm who represented Defendants until November 2009.

The Court concludes that Defendants had, at least, constructive knowledge of the right to compel arbitration upon their signing the APA. *Steiner v. Horizon Moving Systems, Inc.*, 2008 WL 4822774, (C.D. Cal. 2008) (finding element of "knowledge of right to arbitration" satisfied where party had "constructive, if not actual, knowledge of the existing right to compel arbitration upon signing the agreement allegedly containing the arbitration provision"). Defense counsel's hearsay statement that his clients were unaware of the arbitration clause contained in the APA when they signed it does not warrant either a different result or create a disputed question of fact to order an evidentiary hearing on this issue.

**2. Acts Inconsistent with Right to Compel Arbitration**

As mentioned earlier, Defendants actively participated in this case for nearly two years before raising the issue of arbitration, and when they did, it was as a defense in a "first-to-breach-the-contract" argument to Plaintiff's dispositive motion over a month after discovery closed. After litigating this case before a district Judge for eleven months, on January 12 and 20, 2009, the parties voluntarily consented in writing, docket ## 63, 70, to magistrate-judge jurisdiction pursuant to 28 U.S.C. §636(c) to "conduct any and all further proceedings in this case, including the trial, order the entry of final judgment, and conduct all post-judgment proceedings." (docket # 63) On March 17, 2009, the parties' counsel met with the Court and jointly established the Rule 16 Scheduling Order which set "the various deadlines for the judicial management of this case." (docket # 81 at 2)

Additionally, the Court cannot ignore prior defense counsel's legal actions

- 9 -

in this case which were inconsistent with Defendants' contractual right to arbitration. Plaintiff points out that out of "11 depositions" noticed in this case, "Defendants took seven depositions (each lasting almost a full seven-hour day), including a Rule 30(b)(6) deposition."[8] (docket # 170 at 2) Defendants served multiple requests for production and inspection of documents, interrogatories and requests for admissions pursuant to Rules 33, 34, and 36. After discovery closed, Defendants filed an amended counterclaim, adding new claims and allegations. (*Id*.) Specifically, on January 13, 2009, Defendants filed their first Counterclaim, asserting four claims arising out of the APA, the Non-Compete Agreement, and the Lease. (docket # 64 at ¶¶ 14- 36.) On the face of their Counterclaim, Defendants demand a jury trial. In their First Amended Counterclaim, filed on October 14, 2009, docket # 147, Defendants demand a jury trial "on all counts of [their] Counterclaim." (*Id*. at ¶¶ 37-43) For their declaratory relief claims, Defendants expressly invoked the Court's authority, stating that "[t]he Court must adjudicate the right [sic] of the parties relating to these matters pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure." (docket # 64 at ¶¶ 28, 29, 35, 36; docket # 147 at ¶¶ 37-43, 44.) On administrative issues only, Defendants sought and obtained relief from this Court, mostly by stipulation, for extensions to deadlines for filings, deadlines set forth in certain court orders, and due dates in the Scheduling Order. (docket ## 92, 96, 98, 142, 150, and 152)

The Court has little trouble concluding that until January 11, 2010, docket # 167 at 5, over 22 months after Defendants first appeared in this lawsuit on March 7, 2008, docket # 19, Defendants' legal actions in this federal forum were inconsistent with their contractual right to compel arbitration.

**3. Prejudice to Party Opposing Arbitration Resulting from such Inconsistent Acts**

In addition to undue delay or other factors, "[p]rejudice in this context may consist of expense, duplication of effort in separate forums, or advantage to the other

---

[8] The Court counts 12 deposition notices in the docket. Five were filed by Plaintiff (Frederick, Cobb, Decker, Miller and Fox); seven by Defendants (Hofer, Heier, Mitchell, Tiberio, Baldwin, Hauff, and a Rule 30(b)(6)).

- 10 -

party." *Brooks v. Robert Larson Auto. Group*, 2009 WL 2853452, at * 2 (W.D.Wash. 2009) (citing *Mitsui & Co. (USA) v. C & H Refinery, Inc*., 492 F.Supp. 115, 118-20 (N.D.Cal. 1980)); *Ori v. American Family Mut. Ins. Co.*, 2005 WL 3079044, * 3 (D.Ariz. 2005). "Unsurprisingly, courts are reluctant to find prejudice to the plaintiff who has chosen to litigate, simply because the defendant litigated briefly (e.g., by filing a motion to dismiss or requesting limited discovery) before moving to compel arbitration." *Brown v. Dillard's, Inc*., 430 F.3d 1004, 1012 (9th Cir. 2005).

Initially, one might surmise that Defendants' active involvement in this federal litigation for nearly two years would constitute sufficient prejudice to Plaintiff to justify a finding of Defendants' waiver of their right to arbitration. Upon a closer analysis of Ninth Circuit authority, however, that is not the case. While Plaintiff claims to have incurred attorneys' fees in this litigation exceeding $380,000, docket # 170 at 3, like the plaintiff in *Fisher*, "[t]his wound is self-inflicted." 791 F.2d at 698. Acknowledging at oral argument that Plaintiff intended to waive its contractual right to arbitration by filing this federal action, a significant portion of Plaintiff's fees and delay in this case are attributable solely to Plaintiff's aggressive prosecution of its case and the various changes in its requests for relief. Early in the case, Plaintiff sought a temporary restraining order and preliminary injunctive relief, docket # 2, and then Plaintiff stipulated with Defendants to stay this action and vacate the scheduled preliminary injunction hearing. (docket # 36) After unsuccessful mediation, Plaintiff filed another Motion for Preliminary Injunction and Declaratory Relief , docket # 61, which was denied on February 26, 2009. (docket # 77)

Plaintiff filed its First Amended Complaint on November 17, 2008, docket # 52, electing to abandon its original claims for breach of the Non-Competition Agreement and Consulting Agreement in the February 12, 2008 Complaint and replacing them with claims for breach of the Lease Agreement and declaratory judgment with respect to the purchase option contained in the Lease Agreement. (docket ## 1, 44, 52) On September 22, 2009 and without objection by Defendants, Plaintiff filed its Second

Amended Complaint, less than three (3) months before the Defendants invoked their right to arbitrate, again changing the relief sought in the First Amended Complaint from an order to compel the sale of the office building to a request for money damages for Defendants' alleged breach of the purchase option contained in the Lease Agreement. (docket ## 103, 124) There are several other examples in this case wherein Plaintiff incurred attorneys' fees unrelated to Defendants' litigation conduct, such as, requesting continuances of hearings or not complying with prior court orders. (e.g., docket ## 24, 28, 36, 46, 102, and 168) The amount of Plaintiff's attorneys' incurred to date does not alone constitute prejudice to deny Defendants' belated request for arbitration.

Plaintiff's concerns of prejudice regarding the loss of use of the discovery taken in this case, a possible denial of an award of attorneys' fees by the arbitrator to the prevailing party, and the requirement that the arbitration be held in Fargo, North Dakota are illusory. Plaintiff does not cite a single case or any Commercial Arbitration Rule of the AAA[9] which precludes the use of pretrial discovery where, as here, all the discovery was taken before the parties were referred to arbitration or that the prevailing party would not be entitled to an award of reasonable attorneys' fees and costs, including those costs related to arbitration. In fact, the APA mandates that "the arbitrator(s) **shall**, in the final award, order the losing party to pay all of the charges for such arbitration and **all of the prevailing party's costs of arbitration including without limitation reasonable attorneys' fees and expenses, and expert witness fees and disbursements**[.]" (docket # 1-2, Exh 1 at 31) (emphasis added). Further, at oral argument on the record, defense counsel offered to stipulate that the arbitration be held in Phoenix as the APA allows by stipulation. (*Id.* at 30) ("the arbitration shall be held in Fargo, North Dakota, or in such other location as the parties may agree;"). Contrary to its written concern, Plaintiff, however, was unwilling to so stipulate at oral argument, reserving its right to arbitrate in

---

[9] The APA requires "the arbitration . . . be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association then existing." (docket # 1-2, Exh 1 at 31)

- 12 -

Fargo, North Dakota, presumably if it were advantageous to Plaintiff to do so. This refusal confirms the absence of any real prejudice to Plaintiff to arbitrate in Fargo, North Dakota.

Finally, Defendants have not filed a dispositive motion, much less obtained a substantive ruling, that is adverse to Defendants. The pending Motion for Partial Summary Judgment, docket # 140, was filed by Plaintiff and has been briefed but not ruled upon the Court. The trial of this case has not even been set. *Brownstone Invest. Group, LLC v. Levey*, 514 F.Supp.2d 536, 551 (S.D.N.Y. 2007) (recognizing that pretrial expense and delay, without more, do not constitute prejudice sufficient to support waiver but rather prejudice is only properly found where, for example, a party's legal position is damaged by the opposing party's delay in moving for arbitration). Plaintiff's reliance on *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912 (3d Cir. 1992) is misplaced and distinguishable. Besides non-controlling in the Ninth Circuit, there was a finding of waiver of arbitration in *Hoxworth* because after defendants' motion to dismiss the complaint was denied and plaintiffs' motion to compel discovery was granted, did defendants filed its motion to compel arbitration. 980 F.2d at 926. Here, Defendants have not sought any substantive relief from the Court.

In hindsight, the delay in the resolution of this case may have actually benefitted Plaintiff. It is common knowledge that the current recession, beginning in the later part of 2007, has had a major adverse effect on real property values, likely including industrial property, in Maricopa County, Arizona. This delay has allowed Plaintiff sufficient time to amend its initial claim for injunctive relief to compel the sale upon the agreed-upon terms to one seeking damages for the high lease payments ($30,000.00 per month) it paid after Defendants allegedly breached the Lease Agreement when Plaintiff purportedly properly exercised its option to purchase the Deer Valley industrial property at issue in this case. *Corin v. Cintas Corp.*, 2009 WL 5206712, * 5 (E.D.Cal. 2009) (district court did not discern any prejudice by virtue of defendants' actions where there had been no delay or evidence of unjustified pretrial expense, and plaintiff's legal

- 13 -

positions had not been impeded by defendants' assertion of the right to arbitrate at this time. Arbitration clause, however, was unenforceable as procedurally and substantively unconscionable.); *Balezos v. Calvalry Portfolio Servs., LLC*, 2007 WL 2330861, at * 2 (D.Ariz. 2007) (despite two years of litigation, defendant did not waive right to arbitration because "[c]ourts are reluctant to find prejudice to plaintiffs who have chosen to litigate, simply because the defendant litigated briefly in response (e.g., by filing a motion to dismiss or requesting limited discovery) before moving to compel arbitration[,]" citing *Brown*, 430 F.3d at 1012).

Because Plaintiff has not shown that it has suffered prejudice by Defendants' actions, nor can the Court independently discern any, the Court does not find a waiver of the right to arbitrate by Defendants.

**B. Whether the Arbitration Clauses Apply to the Lease Agreement**

Finally, Plaintiff contends that "the Lease Agreement at issue does not require arbitration nor refer to or rely upon the APA in any way." (docket ## 170 at 14, 172 at 5) Plaintiff argues that if the Court finds Defendants did not waive their right to arbitration, the Court should compel arbitration only on those claims arising under the APA, the Consulting Agreement, and the Non-compete Agreement (Counts One, Three and Four of the First Amended Counterclaims) and retain jurisdiction and adjudicate the parties' disputes regarding the Lease and option to buy. (Plaintiff's Second Amended Complaint (Counts I, II, and III), docket # 124; and Count Two of the First Amended Counterclaims, docket # 147 at 13). (*Id.*) According to Plaintiff, the pending Motion for Partial Summary Judgment, docket # 140, purportedly deals with only the claims arising under the Lease Agreement. (docket # 172 at 5) Defendants, however, disagree and contend the parties' APA (sometimes called the "Business Purchase Agreement" by Defendants) "expressly incorporates the Lease Agreement, and thus the agreements must be read together." (docket # 173 at 8) The Court agrees with Defendants that all claims and counterclaims should be arbitrated.

Here, the APA contains the arbitration clauses in Section 9.12 which

require that the parties resolve by arbitration "[a]ny disagreement, Claim, demand, controversy, or dispute (collectively "Dispute") in any way arising out of or relating to this [Asset Purchase and Sale] Agreement. . . ." (docket # 1-2, Exh 1 at 30) The APA expressly references the Lease Agreement in, at least, two separate places. Paragraph 1.27 of the APA defines the term "Lease" to mean "the lease for the Real Estate referred to in Section 2.10" which is clearly the Deer Valley industrial property. (*Id*. at 5) Paragraph 2.10 of the APA requires the Plaintiff, as the "Purchaser," to enter into the Lease Agreement, docket # 141-1, Exh 1 at 2-11, for the Deer Valley property pursuant to the following:

> Lease. Purchaser shall enter into a Lease Agreement (containing an option to buy) with Bumaro, LLC ("Bumaro"), an Arizona limited liability company, for the Real Property described in Schedule 2.10.

(docket # 1-2, Exh 1 at 12) The lessor or "Landlord" is Defendant Bumaro, L.L.C., an Arizona limited liability company, with Defendants Frederick and Cobb, husband and wife, as "Members." (docket # 141-1, Exh 1 at 11-12)

Paragraph 9.4 of the APA implicitly incorporates the Lease Agreement pursuant to the following:

> Complete Agreement. This Agreement, including the Schedules and Exhibits attached hereto and the documents and agreement referred to herein, shall constitute the entire agreement between the parties hereto with respect to the subject matter hereof and shall supersede all previous negotiations, commitments, and writings with respect to such subject matter.

(docket # 1-2, Exh 1 at 28)

As Defendants point out, "[t]he incorporation of the Lease Agreement into the APA also can be inferred from the context in which the agreements were executed." (docket # 173 at 9) "[U]nder Arizona law, substantially contemporaneous instruments will be read together to determine the nature of the transaction between the parties." *Pearll v. Williams*, 146 Ariz. 203, 206, 704 P.2d 1348, 1351 (Az.Ct.App. 1985); *Childress Buick Co. v. O'Connell*, 198 Ariz. 454, 456, 11 P.3d 413, 415 (Az.Ct.App. 2000).

Here, the Lease Agreement, docket # 167-1, Exh. A at 48, and the APA were executed on the same day, June 15, 2007. As a general rule, agreements "should read together as they represent successive steps which were taken to accomplish a single purpose." *Dakota Gasification Co. v. Natural Gas Pipeline Co. of America*, 964 F.2d 732, 734-735 (8th Cir. 1992) (citing, among others, *Williston on Contracts* § 628 at 904 (3d. Ed.) for the prin-ciple that "[e]ven where a writing does not refer to another writing, if such other writing was made as part of the same transaction, the two should be interpreted together."). Because Para-graph 2.10 of the APA required Plaintiff to enter into the Lease Agreement, the APA and Lease Agreement must be read collectively, regardless of whether the Lease Agreement references the APA.

Ninth Circuit authority is clear that the language of arbitration agreements must clearly and unequivocally demonstrate the parties' intention was to arbitrate some claims but not others before claims are bifurcated for resolution in different forums. *Van Ness Town-houses v. Mar Indus. Corp.*, 862 F.2d 754, 757 (9th Cir. 1988) (district court's finding of waiver of arbitration was reversed because the language of the parties' agree-ment clearly demonstrated the parties' intention was to arbitrate some claims but not others); *Paulson v. Dean Witter Reynolds*, 905 F.2d 1251, 1255 (9th Cir. 1990) (district court's finding that claims for losses from option trading were not arbitrable was vacated because "[t]he parties clearly expressed their intention to arbitrate '[a]ny controversy' arising between them concerning the Options Trading Agreements."). Additionally, "[a]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the issue is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Fisher*, 791 F.2d at 694 (citing *Moses*, 460 U.S. at 24-25).

The Court finds that the parties' claims and counterclaims shall be resolved by arbitration.

## **CONCLUSION**

In light of the strong federal policy favoring arbitration "to ensure judicial

enforcement of privately made agreements to arbitrate [and] to promote the expeditious resolution of claims," *Dean*, 470 U.S. at 219, the Court will grant Defendants' request to stay this action, will deny the pending dispositive motion without prejudice and will compel arbitration. 9 U.S.C. §§ 2-4. Despite the passage of two years of active litigation, arbitration of all claims and counterclaims at this late date will most certainly be more expeditious than if the parties remained on their present course.

**IT IS ORDERED** as follows:

1. Defendants' request to compel arbitration, docket.# 167 at 5, is **GRANTED**.

2. The parties are directed to submit this matter to arbitration consistent with the terms of their contract and the provisions of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.

3. Upon completion of the arbitration proceedings, the parties are directed to comply with the provisions of 9 U.S.C. §§ 9-13, as applicable.

4. This action is **STAYED** pursuant to 9 U.S.C. § 3.

5. The parties shall file a Joint Status Report concerning their arbitration on or before **Friday, August 6, 2010** or this case may be dismissed without prejudice.

6. Plaintiff's pending Motion for Partial Summary Judgment, docket # 140, is **DENIED** without prejudice and may be resubmitted in arbitration.

DATED this 9th day of February, 2010.

_____
Lawrence O. Anderson
United States Magistrate Judge